UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NANCY MURPHY and JOSEPH MURPHY, | : |
| *Plaintiffs*, | : |
| v. | : CASE NO. 2:18-1183 |
| STUART SNYDER, DOREEN SNYDER, THE GREENWICH DEVELOPMENT GROUP, LLC and HUDSON VALLEY SPRAY FOAM LLC, | : : : : JULY 18, 2018 |
| *Defendants*. | |

## **COMPLAINT**

Plaintiffs Nancy Murphy and Joseph Murphy (the "Plaintiffs"), as and for their complaint against the Defendants Stuart Snyder, Doreen Snyder, The Greenwich Development Group LLC, and Hudson Valley Spray Foam LLC (collectively, the "Defendants"), allege for their complaint as follows:

### **Parties**

1. Plaintiffs Nancy Murphy and Joseph Murphy are residents of New York. Joseph is a retired Captain from the New York City Fire Department.

2. Defendants Stuart Snyder and Doreen Snyder are residents of Connecticut.

3. Defendant The Greenwich Development Group LLC ("GDG") is a New Jersey limited liability company. Upon information and belief, none of its members are residents of New York.

4. Defendant Hudson Valley Spray Foam LLC ("HVSF") is a New Jersey limited liability company. Upon information and belief, none of its members are residents of New York.

## Jurisdiction and Venue

5. The court has jurisdiction over this matter pursuant to Conn. Gen. Stat. 28 U.S.C. § 1332 because the citizenship of the parties is diverse and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest and costs. The Court has personal jurisdiction over the Defendants because they live in Connecticut and jurisdiction over the Entity Defendants because they are controlled or owned in substantial part by the Defendants.

6. Venue is proper in this district pursuant to Conn. Gen. Stat. § 28 U.S.C § 1391(b)(1) because some or all defendants reside in this district.

## Facts Common to All Counts

7. Defendants Stuart and Doreen Snyder are Joseph's brother-in-law and sister, respectively.

8. Defendant Stuart Snyder has been in the luxury home building business for more than twenty years, performing home construction, luxury home renovation and commercial projections.

9. In or around 2005, Defendant Stuart Snyder told the Plaintiffs (through Joseph) about an investment opportunity concerning two luxury houses Stuart would be building through an LLC. This was of interest to the Plaintiffs because, in light of

Joseph's recent retirement from the New York City Fire Department, Joseph wanted to make sure he had saved enough money for his children's college and for retirement.

10. Defendant Stuart Snyder discussed with Joseph the prospect of the Plaintiffs investing in a project located in Connecticut being run by Stuart.

11. In reliance on representations from the Defendants that money would be used for only for the stated investment purposes, the Plaintiffs' wire transferred $375,000 to the account of a limited liability company controlled by Stuart. These funds were comprised of an inheritance Nancy received and a mortgage obtained against the Murphy's home.

12. Once the monies were transferred, the Plaintiffs asked what was happening with the investment. The Defendants ignored the Plaintiffs' inquiries concerning the status of the funds (and provided excuses when they could be reached), with no return of any of the Plaintiffs' money.

13. After approximately five years' worth of false promises, in 2010, the Plaintiffs commenced a civil action against the Defendants (and entities controlled by either or both of them) in the United States District Court for the Eastern District of New York in an action captioned *Murphy, et al. v. Snyder, et al.*, No. 10 Civ. 01513 (JS)(AKT) (EDNY).

14. The Defendants appeared in the District Court Action through counsel and answered the complaint. Preliminary discovery revealed that the Plaintiffs' funds were not used for the project as promised but were instead used by the

Defendants to enjoy a lavish lifestyle and finance costly personal expenses, including home electronics and private college for the Defendants' daughter.

15.. After numerous findings of discovery abuse and noncompliance, the district court in September 2014 entered judgment against the Defendants in an amount exceeding $634,000, with interest running thereon at the federal rate.

16. The Plaintiffs caused the judgment to be registered in this district in an action captioned *Murphy v. Snyder*, No. NO. 3:14-MC-135 (VLB).

17. The Plaintiffs noticed a deposition for the Defendants to testify about their assets. The Defendants failed to appear. A bank commenced foreclosure proceedings on the Snyder's Greenwich home. The Defendants subsequently filed for bankruptcy. During the course of the bankruptcy the Defendants were obligated to make periodic reports concerning their financial condition, as discussed below.

18. The Plaintiffs successfully moved in the bankruptcy proceeding to have the judgment declared nondischargeable. Among other things, the Bankruptcy Court found that the judgment was nondischargeable on the grounds of breach of fiduciary duty, embezzlement, and willful and malicious injury.

19. Last year, the Plaintiffs caused a marshal to examine local banks for accounts registered to either or both of the Defendants. The marshal's search for accounts at 23 banks revealed nothing.

20. Last year, the Plaintiffs learned that the Defendants were preparing to finance a lavish wedding in the exclusive Hamptons area of New York for their daughter. The Plaintiffs caused a subpoena to be served upon the planner of the

wedding to learn how the Defendants, who had repeatedly proclaimed their poverty to the Bankruptcy Court, were able to afford such an affair.

21    The Defendants moved to quash the subpoena on the grounds, among other things, that it would cause embarrassment in connection with the wedding. The Plaintiffs successfully opposed the motion, but could not obtain a ruling after the wedding occurred and the money to pay for it was spent. The goal of the Defendants' motion was to not to prevent embarrassment but instead to delay discovery of the Defendants' financial circumstances until after the wedding happened. In this respect, the motion completely succeeded.

22.   The Plaintiffs caused a subpoena to be issued to a bank (the "Bank Subpoena") that paid a check to the wedding planner from an account in the name of GDG. The Bank Subpoena asked for information about accounts controlled by the Defendants.

23.   In response to the subpoena, the bank produced records related to accounts in the name of Defendants GDG and HVSF (GDG and HVSF are the "Entity Defendants"). The bank did not have any accounts in the name of the Defendants individually.

24.   Upon information and belief, GDG is a company engaged in home construction and renovation and HVSF is engaged in the business of home insulation. Both are completely controlled by Defendant Stuart Snyder. Upon information and belief, these accounts receive funds from Stuart's business activities, which he purports to conduct through the Entity Defendants.

25. Bank records revealed that for years the Defendants have been using the accounts of the Entity Defendants to live a lavish lifestyle while preventing funds from ever reaching accounts held by them personally (and therefore subject to the legal process to satisfy the claims of creditors).

26. By way of example and not limitation, records concerning the Entity Defendants' accounts revealed numerous expenditures for the lavish wedding, luxury vacations, air travel, wine, seafood, boating, personal medical expenses, fees for their personal bankruptcy counsel, and luxury home furnishings. None of these are proper business expenses of an entity engaged in home construction or insulation. Instead, they are expenditures that would ordinarily be made by individuals (but not properly by individuals who claim to be in the throes of bankruptcy).

27. The Defendants have engaged in a continuous scheme where these funds for personal use were comingled with the funds of the Entity Defendants -- available for the Defendants' use but not available for legal process to satisfy the claims of creditors, such as the Plaintiffs. Instead of causing the Entity Defendants to pay income to accounts maintained by themselves (which would be then be subject to legal process to satisfy the claims of creditors such as the Plaintiffs), the Defendants chose to use the Entity Defendants and their bank accounts as fraudulent safe havens to retain the benefits of a personally lavish lifestyle but none of the responsibility to satisfy creditors. On other occasions the Defendants caused the Entity Defendants to make payments payable to cash, making the recipient effectively untraceable.

28. At no time during the bankruptcy process did the Defendants reveal that they were effectively running their personal finances through the accounts of the Entity Defendants, despite their obligation to keep the Bankruptcy Court and creditors (such as the Plaintiffs) informed about the status of their finances. In periodic reports to the Bankruptcy Court the Defendants disclosed some financial activity related to their debtor in possession (DIP) account but did not disclose that they were running substantial amounts of their personal affairs through the Entity Defendants, creating a misleading and therefore fraudulent picture of their financial circumstances. Through the scheme they concocted the Defendants were able to conduct a secret financial life away from the scrutiny of their creditors.

29. Furthermore, upon information and belief the Defendants have used additional fraudulent means and methods that they have concealed but which are expected to be disclosed during discovery to conceal financial matters related to their personal affairs, including to refinance their mortgage debt on their primary residence. Despite their claimed financial hardship the Defendants were able to refinance delinquent mortgage debt exceeding $1.6 million in a manner designed to conceal the source of such funds, and in an effort to fraudulently perfect their interest in the property and to eliminate liens held by other creditors, including the lien arising from the nondischargeable debt owed to the Plaintiffs.

30. The Defendants' actions were willful and malicious and occurred for no valid purpose other than to frustrate the Plaintiffs' efforts to obtain satisfaction of their valid judgment.

## COUNT ONE
### Fraudulent Concealment of Property (Conn. Gen. Stat. § 52-562)

1-30. Plaintiffs incorporate by reference Paragraphs 1 through 30 of the Complaint as if set forth herein and furthermore state as follows:

31. The Plaintiffs are the holders of a valid judgment against the Defendants. The Defendants have refused to pay the judgment.

32. By the acts aforesaid acts, including the use of bank accounts of the Entity Defendants and other concealed accounts, the Defendants have wrongfully engaged in a practice to conceal, remove, and effectively convey away their property with the intent to prevent it from being taken by legal process.

33. The existence of the cash flow in the Entity Defendants' accounts, and the funds used to reinstate the mortgage on their personal residence, shows that the Defendants have exempt property sufficient to discharge the debt (or at least contribute toward the discharge) but instead of paying the debt they have refused to do so and instead have engaged in an artifice and scheme for the purpose of living a lavish lifestyle and avoiding their legal obligations to the Plaintiffs.

34. This conduct mirrors the conduct which caused the underlying debt – willful and malicious secretive misappropriation and misuse of funds to carry on a lavish lifestyle instead of fulfilling financial obligations.

35. The aforesaid misconduct has damaged the Plaintiffs in an amount to be proven at trial. Because the conduct of the Defendants has been willful and malicious, the Plaintiffs further seek treble damages and attorney's fees.

## COUNT TWO
### Reverse Veil Piercing Against Entity Defendants, Instrumentality Theory

1-35.   Plaintiffs incorporate by reference Paragraphs 1 through 35 of the Complaint as if set forth herein and furthermore state as follows:

36.   The Defendants completely dominated the Entity Defendants such that the Entity Defendants had no separate mind, will, or existence of their own.

37.   The Defendants used the separate existence of the Entity Defendants to perpetrate a fraud, specifically the concealment of assets that were actually personal to the Defendants in business entities for the purpose of frustrating creditors' rights.

38.   The aforesaid misconduct has proximately caused the Plaintiffs injury, in that assets that would otherwise be subject to collection have been unavailable to the Plaintiffs.

## COUNT THREE
### Reverse Veil Piercing Against Entity Defendants, Identity Theory

1-38.   Plaintiffs incorporate by reference Paragraphs 1 through 38 of the Complaint as if set forth herein and furthermore state as follows:

39.   There is such a unity of interest between the Defendants and the Entity Defendants that the independence of the Entity Defendants ceased or had never begun.

40   Adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the Entity Defendants to escape justice and further perpetuate the Defendants' fraudulent concealment of assets that should be liable to satisfy the judgment.

41. The aforesaid misconduct has proximately caused the Plaintiffs injury, in that assets that would otherwise be subject to collection have been unavailable to the Plaintiffs.

WHEREFORE, the Plaintiffs demand against the Defendants:

1. Fair and just money damages.

2. Costs and prejudgment and postjudgment interest.

3. Attorney's fees.

4. Common law punitive damages.

5. An order disregarding the corporate veil between the Entity Defendants and the Defendants and ordering that the Entity Defendants are liable for the Judgment.

6. Such other relief as the Court deems just and equitable.

Respectfully submitted,

THE PLAINTIFFS

*/s/ Garrett S. Flynn*

By:   Garrett S. Flynn, Esq. (#ct22071)
**LAW OFFICES OF GARRETT S. FLYNN, LLC**
10 North Main Street, Suite 221
West Hartford, CT  06107
 (860) 676-3148
gsf@flynn-law.com

Their Attorney